Sullivan
No. 87-031

## J. C. Bernard Desmarais

v.

## Joy Manufacturing Company & a.

January 29, 1988

*Sheehan, Phinney, Bass & Green P.A.*, of Manchester (*Stephen E. Weyl* and *Marilyn L. Butler* on the brief, and *Ms. Butler* orally), for the plaintiff.

*Gallagher, Callahan & Gartrell,* of Concord (*Stephen J. McAuliffe* and *Anne L. Gannon* on the brief, and *Ms. Gannon* orally), for the defendant.

BROCK, C.J. The plaintiff, Bernard Desmarais, appeals from a decision of the Superior Court (*DiClerico,* J., acting upon the recommendation of a Master, *R. Peter Shapiro,* Esq.) concerning his pension benefits claim against his former employer, Joy Manufacturing Company (hereinafter Joy or the company). The court below upheld Joy's decision denying to Desmarais, whose employment the company had terminated, the measure of benefits available to employees eligible for retirement under the company's pension plan for salaried employees. We affirm.

In 1983, when the company terminated plaintiff's employment as part of a reduction in its work force, he was fifty-three years old and had worked for the company for more than thirty-four years.

During his employment, Desmarais participated in Joy's retirement income plan for salaried employees (hereinafter salaried plan). Under the salaried plan, normal retirement is at age sixty-five, and the earliest that a salaried employee may retire is at age fifty-five, provided the defendant's pension committee approves. To a salaried employee who is eligible to retire, the salaried plan also extends the option of receiving pension benefits calculated pursuant to the hourly employee pension plan (hereinafter hourly plan), rather than the salaried plan, if the hourly plan calculations would yield more generous benefits. Finally, under the salaried plan, an employee who ceases employment with the defendant before becoming eligible to retire receives benefits calculated under a separate section of the salaried plan, Section 7.01.

After terminating Desmarais's employment, Joy informed him that he was ineligible to receive benefits calculated under the hourly plan because he had not retired and was ineligible to retire. Instead, the company advised, he would receive benefits in accordance with one of several options available under Section 7.01. Desmarais elected one option, which provided for an immediate lump-sum refund to him of his total contributions plus interest, and subsequent monthly payment to him of the company's contributions.

Shortly after electing the lump-sum payment option, Desmarais wrote to the company, acknowledging his recent election under the salaried plan but nonetheless asserting his right to receive the more generous retirement benefits that in his view the hourly plan would provide and the company, through various pension plan descriptions and oral representations, had led him to expect. Joy's plan administrator, in response, explained that Desmarais was a terminated employee under the salaried plan, and consequently not entitled to receive normal retirement benefits under the hourly plan.

After appealing the plan administrator's decision unsuccessfully to the company's pension committee, Desmarais commenced this action, alleging that the company's denial of the requested benefits was both arbitrary and capricious, and a violation of 29 U.S.C. § 1022(a)(1), the disclosure provision of the Employment Retirement Income Security Act of 1974 (hereinafter ERISA). The trial court dismissed a related common law claim in assumpsit, and trial proceeded before a master on the ERISA claim.

The master concluded that Desmarais was not entitled to relief for believing, contrary to the plan's terms, that the hourly plan option is available to a salaried plan participant who is eligible to retire under the terms of either the salaried plan or the hourly plan,

which permits hourly plan participants to retire after thirty years of service without regard to age. The master's recommendations to the trial court, in accordance with his conclusion, rested on three findings: first, the salaried plan satisfies ERISA vesting and funding requirements; second, the plan administrator was neither arbitrary nor capricious in interpreting the plan's language to preclude payment of the hourly plan benefits that the plaintiff claimed; and, third, the company complied with ERISA disclosure requirements in providing a plan and summary descriptions of the plan that would inform the average plan participant that he could not retire until age fifty-five at the earliest, and that he could not avail himself of the hourly plan option until he was eligible to retire under those terms.

In conjunction with the disclosure finding, the master found that Desmarais had failed to prove that the company's written or oral representations had misled him, or that he had suffered a detriment as a consequence. In the absence of evidence indicating that Desmarais was entitled to relief, the master therefore recommended that the trial court dismiss Desmarais's appeal, affirm the decision of the company's pension committee, and enter judgment for the company. The trial court approved the master's recommendations.

The essence of Desmarais's argument below and on appeal is that the company led him to believe, and to rely to his detriment on the belief, that the hourly plan benefits option would be available to a salaried employee eligible to retire under the terms of the hourly plan. He asserts a right on two grounds to the measure of benefits that the company denied: first, his detrimental reliance on the summary plan descriptions which, he contends, were ambiguous, therefore likely to mislead the average salaried plan participant, and consequently violative of ERISA disclosure requirements; and, second, his detrimental reliance on the oral representations which, he contends, should estop the company to deny the rights that the oral representations appeared to assure.

Before considering the merits of plaintiff's arguments, we note that in exercising our jurisdiction with respect to what is essentially a federal question, we are guided and bound by federal statutes and decisions of the federal courts interpreting those statutes. *See* 29 U.S.C. § 1132(a)(i)(B), (e)(1), § 1144(a).

■■ Consistent with the weight of federal authority, we will accord considerable deference to the decision of the company's plan administrator in denying the plaintiff's claim, and thence to the decision of the superior court in upholding the plan administrator's

determination, unless we conclude that the administrator's decision was arbitrary, capricious or without rational basis. *Paris v. Profit Sharing Plan, Etc.*, 637 F.2d 357, 362 (5th Cir.), *cert. denied*, 454 U.S. 836 (1981); *see Griffis v. Delta Family-Care Disability*, 723 F.2d 822, 825 (11th Cir.), *cert. denied*, 467 U.S. 1242 (1984); *see also Rueda v. Seafarers Intern. Union, Etc.*, 576 F.2d 939, 942 (1st Cir. 1978) (applying arbitrary and capricious standard in non-ERISA pension dispute). *But see Bruch v. Firestone Tire and Rubber Co.*, 828 F.2d 134, 138–39, 144–45 (3d Cir. 1987) (concluding that standard is inappropriate where pension plan is funded entirely by employer). Consistent with prior decisions of this court, moreover, we will not overturn a master's findings and rulings "unless they are unsupported by the evidence or are erroneous as a matter of law." *Summit Electric, Inc., v. Pepin Brothers Const., Inc.*, 121 N.H. 203, 206, 427 A.2d 505, 507 (1981).

■ ERISA does not require an employer to have a pension plan, *Petrella v. N.L. Industries, Inc.*, 529 F. Supp. 1357, 1365 (D.N.J. 1982), but, for those employers that have pension plans, establishes minimum vesting, funding, fiduciary and disclosure requirements that a plan must satisfy in order to qualify for federal tax benefits. *Id.* at 1361.

Section 1022 is the ERISA disclosure provision obligating an employer to furnish plan participants with a written summary of the plan, or "summary plan description," that is "calculated to be understood by the average plan participant and . . . sufficiently accurate and comprehensive to reasonably apprise such participants . . . of their rights and obligations under the plan." 29 U.S.C. § 1022(a)(1). The requirement of comprehensible yet comprehensive summary plan descriptions applies, as well, to summaries of any material modifications of the plan. *Id.* Among those pieces of information that the statute specifically requires in summary descriptions are "the plan's requirements respecting eligibility for participation and benefits; a description of the provisions providing for nonforfeitable pension benefits; [and] circumstances which may result in disqualification, ineligibility, or denial or loss of benefits." 29 U.S.C. § 1022(b).

■■ The federal courts have adhered to a flexible standard in determining whether a summary plan description provides adequate disclosure under ERISA. Consequently, a summary description that reasonably satisfies the broad requirements of comprehensibility to the average plan participant, and informational accuracy and comprehensiveness, is likely to survive judicial

scrutiny, even if the summary omits certain explanatory information or is not as clear as it might be. *See, e.g., Lee v. Union Elect. Co.*, 789 F.2d 1303, 1307–08 (8th Cir.) (summary description that contained simple, non-technical language and illustrations of benefits option was sufficient, despite lack of labeling and express statement that would enhance employee's understanding), *cert. denied*, 107 S. Ct. 460 (1986); *McKnight v. Southern Life and Health Ins. Co.*, 758 F.2d 1566, 1570 (11th Cir. 1985) (summary description was subject to reasonably clear and literal interpretation by employee, even without hypothetical questions and answers to illustrate plan's application). Even where a summary plan description is deficient under ERISA, however, the federal courts will not grant a participant relief unless he demonstrates his detrimental reliance on the plan description deficiency. *See Ruotolo v. Sherwin-Williams Co.*, 622 F. Supp. 546, 549–50 (D. Conn. 1985); *Freund v. Gerson*, 610 F. Supp. 69, 70–72 (S.D. Fla. 1985).

Desmarais contends first that the company's written summaries of the plan—the summary plan description for the 1971 plan, the summary of the 1980 modification, and a booklet summarizing the plan as modified—contained obscure, vague and misleading language and therefore provided inadequate disclosure under ERISA. In support of this contention, he asserts the company's failure to disclose in the summaries the restricted availability of the hourly plan benefits option, which is contingent on a salaried plan participant's being eligible to retire under the terms of the salaried plan. Desmarais also claims that the company affirmatively encouraged salaried plan participants to believe that the option would be available once an employee was eligible to retire under the terms of either the salaried plan or the hourly plan.

■ Our review of the company's summary documents reveals no obscure, vague or misleading language pertaining to the hourly plan benefits option. In both the 1980 modification summary and the booklet, the company describes the option in conjunction with retirement under the salaried plan. While Desmarais considers the company's use of the term "retirement" to be ambiguous, we find that taken in context "retirement" refers unambiguously to retirement under the terms of the salaried plan. In light of the flexible standard that federal courts apply in evaluating summary plan descriptions for compliance with ERISA, *see Lee v. Union Elect. Co.*, 789 F.2d at 1307; *McKnight v. Southern Life and Health Ins. Co.*, 758 F.2d at 1570, we conclude that the company drafted the summary descriptions in a manner calculated to inform the average plan participant of the plan's terms as a whole, and the

hourly plan benefits option in particular. Because we find that the summary descriptions of the option were not misleading or otherwise deficient under the ERISA disclosure provision, we need not address Desmarais's assertions of detrimental reliance.

██ As an alternative basis for relief, Desmarais asserts that his detrimental reliance on oral representations of the company's management employees estops the company to deny to him the hourly plan benefits that, he contends, the oral representations led him to believe would be available after thirty years of service. Because, as he concedes, the ERISA disclosure provision applies only to written representations, *see* 29 U.S.C. § 1022(a)(1), he must look beyond ERISA in claiming relief on the basis of oral representations. If his purpose, however, in stating that ERISA contemplates the fashioning of a federal common law of estoppel, is to urge this court to fashion such a rule, we must decline to do so. Even in federal courts, the creation of federal common law is appropriate only in limited circumstances, *see generally* Field, *Sources of Law: The Scope of Federal Common Law*, 99 HARV. L. REV. 881 (1986), and the authority of State courts to create federal common law is not clear. *See id.* at 890 & n.30.

 If, instead, Desmarais premises his estoppel claim on State common law, we would state that ERISA contains a broadly construed provision for the preemption of all State law insofar as the law pertains to employee benefit plans. *See* 29 U.S.C. § 1144(a). The expansive reach of the preemption provision compels our conclusion that ERISA precludes Desmarais's State estoppel claim, a result that is consistent with the decisions of other State courts. *See DePaul Hospital v. Mutual Life Insurance Co. of New York*, 487 So. 2d 143, 146 (La. App.), *cert. denied*, 492 So. 2d 1218 (La. 1986); *Boutillier v. Libby, McNeill & Libby, Inc.*, 42 Wash. App. 699, 709–10, 713 P.2d 1110, 1118–19, *review denied* (Wash. 1986). *Compare Shaw v. Westinghouse Elec. Corp.*, 419 A.2d 175, 179–80 (Pa. Super. 1980). We do not overlook the fact that the master decided Desmarais's estoppel claim on the merits without considering the possibility of preemption. Nonetheless, because the master's denial of relief on the merits comports with our disposition here on the basis of preemption, we will sustain the result below because we find a valid alternative ground to support it. *See Lemay v. Rouse*, 122 N.H. 349, 352, 444 A.2d 553, 555 (1982).

██ Having determined that the company's summary plan descriptions complied with ERISA and were sufficient to inform Desmarais that the hourly plan benefits option is available only to

an employee eligible to retire under the terms of the salaried plan, we conclude that Desmarais, who was ineligible to retire under the salaried plan, was not entitled to the benefits he now claims. We therefore hold that the decision of the company's plan administrator to deny benefits pursuant to the hourly plan benefits option was not arbitrary, capricious or without rational basis, and find no reversible error in the decision of the master and trial court below.

*Affirmed.*

All concurred.